UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ISAAC SHAMOUN,

                       Plaintiff,                        REPORT & RECOMMENDATION

        -against-

                                                      05-CV-5730 (SLT) (RER)

BOARD OF TRUSTEES, LIQUOR SALESMEN'S
UNION LOCAL 2 PENSION FUND,
VINCENT FYFE, MARTIN MANN,
VINCENT VOLPE, ROBERT LENTO,
MATTHEW MATTASSA and
STEVEN MERESMAN,

                       Defendants.
-------------------------------------------------------------------X

**RAMON E. REYES, JR., U.S.M.J.:**

      Plaintiff Isaac Shamoun ("plaintiff" or "Shamoun") brought this action against defendants Board of Trustees, the Liquor Salesmen's Union Local 2 Pension Fund (the "Fund") and Vincent Fyfe, Martin Mann, Vincent Volpe, Robert Lento, Matthew Mattassa, and Steven Meresman (the "Trustees") alleging that the Fund violated the anti-cutback provision of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1054(g)(1), and that the Trustees breached their fiduciary duty to plaintiff. Defendants have moved for summary judgment alleging that the anti-cutback provision of ERISA is inapplicable, and that plaintiff has failed to establish the elements of a breach of fiduciary duty. The Honorable Sandra L. Townes referred this matter to me for a report and recommendation pursuant to 28 U.S.C. § 636(b)(3). For the reasons set forth below, I respectfully recommend that defendants' motion for summary judgment be granted and that plaintiff's complaint be dismissed in its entirety.

Background

Plaintiff has been employed by Peerless Importers, Inc. ("Peerless") as a salesperson since 1964. Defendants' Local Rule 56.1 Statement of Material Facts ¶ 3 ("Defs' 56.1 Stmt"); Plaintiff's Local Rule 56.1 Statement of Material Facts ¶ 1 ("Pl's 56.1 Stmt").[1] During plaintiff's employment, Peerless has continuously been a signatory to a collective bargaining agreement with the Liquor Salesmen's Union Local 2 (the "Union"). *Id*. ¶ 4. Pursuant to that agreement, Peerless is required to make contributions to the Fund on behalf of its covered employees. *Id*. ¶ 5. Plaintiff has been a covered employee under the Fund since 1964.[2] *Id*. ¶ 2.

The Fund is a multi-employer, employee pension benefit plan as defined by ERISA, 29 U.S.C. § 1002 (2)(A), (35), (37)(A). *Id*. ¶¶ 8, 15. Since 1956, the terms of the Fund have been governed by an Agreement and Declaration of Trust (the "Trust"). *Id*. ¶ 16. The Trust sets forth a Retirement Plan (the "Plan") which provides the rules and regulations of the Fund, any amendments, and, *inter alia*, the basis for benefits eligibility for covered employees and beneficiaries. *Id*. ¶ 17.

Plaintiff contends that when he first became a member of the Union, he was informed by the leadership that after twenty-five years of continued service, plaintiff could receive retirement benefits and continue working as long as he wished. Plaintiff's Affidavit in Opposition to Motion for Summary Judgment ¶ 3 ("Pl's Aff."). At the time, plaintiff was aware that the Plan stated that "an employee shall not be entitled to Retirement Benefits for any month or part

---

[1] Plaintiff admits the statements set forth in defendants' Rule 56.1 Statement ¶¶ 1-26. Pl's 56.1 Stmt ¶ 1.

[2] Plaintiff was born in 1937 and reached age 65 on or about July 1, 2002.

2

thereof during which he is employed . . . by any . . . corporation engaged in the Wine and Liquor Industry having a collective bargaining agreement in effect with the Union . . ." (hereinafter, "Suspension of Benefits" rule). *Id.* However, plaintiff claims that the Union's leadership informed him that the above provision of the Plan was modified by the following provision:

> An employee for whom at least 300 monthly payments have been made to this Retirement Fund over a period of at least twenty-five years without a break in service . . . may retire at any time thereafter irrespective of age and be entitled to receive a monthly pension of four hundred and fifty dollars for life, anything contained in this retirement plan to the contrary notwithstanding. [hereinafter, "Continuous Employment" provision].

*Id.* ¶ 4.

In the late 1980's, plaintiff alleges that he was informed by the Union's leadership that the Plan had changed. Plaintiff claims that from then on, Union members would no longer be permitted to work and receive retirement benefits. *Id.* ¶ 6. Plaintiff claims that he knows at least two colleagues older than him, Michael Fein ("Fein"), deceased, and Gill Rosenberg ("Rosenberg"), who continued to work and receive retirement benefits. *Id.* ¶ 5.

On or about August 6, 2004, plaintiff commenced a civil action in this district, 04-cv-3368, which was presided over by the Honorable I. Leo Glasser. Defs' 56.1 Stmt. ¶ 20. Judge Glasser granted defendants' summary judgment motion without prejudice to renewal of plaintiff's claims because plaintiff failed to exhaust his administrative remedies. *Id.* ¶ 21. Subsequently, plaintiff filed a pension application with the Fund seeking a monthly retirement benefit of $2,250 as of July 7, 2004 and continuously thereafter, although he was still employed by Peerless. *Id.* ¶ 22. On or about May 23, 2005, plaintiff's application was denied based on the Plan's Suspension of Benefits rule which prohibits plan participants from collecting retirement benefits while working in the liquor sales industry. *Id.* ¶ 23. Plaintiff then filed an appeal with

the Fund claiming that he was entitled to pension benefits under the holding in *Central Labor Pension Fund v. Heinz*, 541 U.S. 739 (2004).[3] *Id.* ¶ 25. By letter dated October 12, 2005, the Trustees denied plaintiff's appeal. *Id.* ¶ 26.

Plaintiff filed the complaint on December 8, 2005, alleging that defendants violated the anti-cutback provision of ERISA, and that defendants breached their fiduciary duty by inequitably applying the Plan provisions. Docket Entry 1. Defendants filed the instant motion on December 12, 2006, alleging that the anti-cutback provision of ERISA is inapplicable and that plaintiff has not set forth material facts to support a breach of fiduciary duty claim. Docket Entry 12.

Discussion

I.    Summary Judgment Standard

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Am. Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir. 1981). In addition, the court must resolve all ambiguities and draw all reasonable inferences in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If, however, the opposing party fails

---

[3] In *Heinz*, the plaintiff retired and received retirement benefits pursuant to a pension benefit plan. At his retirement, the plan allowed a participant to work as a supervisor in the construction industry while obtaining retirement benefits. A few years after plaintiff's retirement, the plan was amended, essentially suspending retirement benefits to any participant who was employed in any capacity within the construction industry. The Supreme Court held that this amendment limited an accrued benefit, and thus, violated ERISA's anti-cutback provision.

to make a showing of an essential element of its case for which it bears the burden of proof, summary judgment will be granted. *Celotex*, 477 U.S. at 323; *Smith v. Half Hollow Hill Cent. Sch. Dist.*, 349 F. Supp. 2d 521, 524 (E.D.N.Y 2004).

To overcome a motion for summary judgment, the opposing party must show that there is an issue of material fact that is in dispute. That is, the disputed fact must be one which "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 242. A fact issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the opposing party does not set forth specific facts showing that there is a genuine issue for trial, summary judgment is appropriate. FED. R. CIV. P. 56(c).

II.     Analysis

     A.     Plaintiff's Claim Under ERISA's Anti-cutback Provision Must Fail

ERISA's anti-cutback provision provides that "the accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . ." 29 U.S.C. § 1054(g)(1). Any amendment placing materially greater restrictions on the receipt of plan benefits reduces the benefit and is therefore a violation of § 1054(g)(1). *Heinz*, 541 U.S. at 744 (plan amendment that eliminated possibility of working within construction industry after retirement violated anti-cutback provision where beneficiary had, in line with the pre-amended plan, already retired and received benefits while working as a construction supervisor). A materially greater restriction placed upon an accrued benefit includes not only a reduction or elimination of benefits but also a suspension of benefits. *Id.* at 745, 756.

Defendants allege that ERISA's anti-cutback provision is inapplicable in this case because plaintiff's benefits have not been reduced. Defendants contend that the Plan, although

5

amended during plaintiff's tenure, has always contained the same substantive provisions with respect to retirement and continued employment, and thus does not limit any accrued benefits. Memorandum in Support of Defendants' Motion for Summary Judgment at 9 ("Defs' Memo"). The Plan, as amended through January 1, 2000, provides:

> Any participant, on whose behalf an Employer has been required to make contributions to the Fund for at least 300 months may retire and begin to receive a full, unreduced pension, regardless of his age at retirement. [hereinafter, "Continuous Employment" provision].
>
> * * *
>
> Once your pension begins, you will receive regular monthly payments thereafter for the rest of your life. However, if you are reemployed after your retirement in a wholesale sales, sales managerial or supervisory capacity in the wine or liquor industry with such reemployment existing in the States of Connecticut, New Jersey, or New York, your pension will be suspended until you again retire. [hereinafter, "Suspension of Benefits" rule].

Defs' Memo, Exh. B at 4. Defendants further contend that the Trustees applied the provisions of the Plan appropriately. Defs' Memo at 7. According to defendants, plaintiff would not have been entitled to recover retirement benefits and continue to work in 1964 when he joined Peerless, just as he is not entitled to do so today. Defs' 56.1 Stmt., Exh. C.

The Trustees' interpretation of the Plan provisions was not arbitrary and capricious as there was a reasonable basis for the Fund's decision. Indeed, given the order in which the Continuous Employment provision and the Suspension of Benefits rule appear within the Plan, the only logical interpretation is that the Suspension of Benefits rule modifies the Continuous Employment provision, not vice-versa as plaintiff argues.

In addition, even assuming that the Trustees' *application* of the Suspension of Benefits rule and Continuous Employment provisions has changed, effectively limiting a benefit plaintiff had already accrued, defendants have not violated § 1054(g)(1). The anti-cutback provision

6

specifically states that an *amendment* may not decrease an accrued benefit. Plaintiff neither lists, provides, nor points to any Plan amendment that actually modifies or limits the benefit to which he claims he is entitled. Instead, plaintiff only alleges that the Union leadership told him that the Plan was amended. At most, without any proof of such an amendment, plaintiff's factual assertions illustrate a change of interpretation or application of Plan provisions by the Trustees. Plaintiff points to no case where a change in the application or interpretation of plan provisions, instead of an actual amendment, is sufficient to support a cause of action under § 1054(g)(1).[4]

Furthermore, plaintiff fails to allege any specific facts that support his conclusion that the Continuous Employment provision actually modified the Suspension of Benefits rule by allowing a Union member to receive retirement benefits after twenty-five years of continued service while continuing to work in the industry. In this regard, plaintiff's reliance on former colleagues Fein and Rosenberg is misplaced as plaintiff fails to provide any facts to support his conclusion that Fein and Rosenberg continue to work and receive benefits according to his interpretation of the Plan provisions. Instead, as defendants maintain, it is undisputed that Fein

---

[4] To the extent that plaintiff asserts an equitable estoppel claim under ERISA based on the allegation that he was told by a Union representative that he was entitled to a pension notwithstanding his continued employment, that claim must be denied as a matter of law. In a similar context the Second Circuit has soundly rejected such an argument:

> In our view, Chambless' allegations regarding representations made to him by a Union representative are insufficient to support a claim of estoppel against the Plan. We have held that because the actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan, courts have been reluctant to apply the estoppel doctrine to require the payment of pension funds.

*See Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1041 (2d Cir. 1985) (internal quotation omitted).

and Rosenberg were allowed to receive retirement benefits while working at Peerless because they fall into a different category of workers than plaintiff – workers that had reached the age of 70 ½ between December 31, 1987 and January 1, 1998. Affirmation of J. Warren Mangan, Esq. ¶ 5 ("Mangan Aff."). According to the controlling Internal Revenue Code ("IRC") provision at the time, 26 U.S.C. § 401(a)(9)(C), defendants were required by law to provide retirement benefits to any worker who reached age 70 ½ regardless of the Fund's suspension of benefits rule. *Id*. Effective January 1, 1998, the IRC was amended and the "required beginning date" for the receipt of pension benefits changed to April 1 of the calender year following the later of (i) the calender year in which the participant attains age 70 ½; or (ii) the calender year in which the participant retires. 26 U.S.C. § 401(a)(9)(C). As a result, defendants are no longer required to provide retirement benefits to workers at age 70 ½.

      B.      <u>Plaintiff's Breach of Fiduciary Duty Claim Must Fail</u>

Plaintiff further alleges that the Trustees breached their fiduciary duty by inequitably applying the plan provisions by allowing, either openly or by subterfuge, only some Plan participants to obtain retirement benefits while continuing to work within the liquor sales industry. Complaint ¶ 19. ERISA provides "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).[5] There are only two provisions of ERISA available to plaintiff that allow a plan participant to bring a civil action for

---

[5] Plaintiff has not identified the section of ERISA under which he purports to bring a breach of fiduciary duty claim. However, section 1104(a)(1)(D) is the provision which most likely supports his factual allegations.

breach of fiduciary duty, § 1132(a)(2) and § 1132(a)(3).[6] Section 1132(a)(2) states "a civil action may be brought by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109 provides

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). Section 1132(a)(3) permits a civil action to be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act of practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the term of the plan." 29 U.S.C. § 1132(a)(3).

Although plaintiff failed to state which provision of § 1132 he is bringing suit under, plaintiff does not have a legally cognizable claim under either provision. To bring a claim under § 1132(a)(2), the cause of action must "be brought in a representative capacity on behalf of the plan as a whole." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) ("a fair contextual reading of [1109] makes it abundantly clear that its draftsmen were primarily concerned with the possible misuses of plan assets, and with remedies that would protect the

---

[6] To the extent that plaintiff alleges that defendants' breached their fiduciary duty by denying plaintiff plan benefits to which he is entitled, plaintiff's remedy lies in § 1132(a)(1)(B). As discussed earlier, plaintiff is not entitled to plan benefits, and therefore, may only claim breach of fiduciary duty under § 1132(a)(2) or § 1132(a)(3).

9

entire plan, rather than with the rights of an individual"); *see Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993) (citing *Russell* and dismissing a § 1132(a)(2) claim "because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan."); *see also Nechis v. Oxford Health Plans, Inc.*, 328 F. Supp. 2d 469, 477 (S.D.N.Y. 2004) (dismissing a § 1132(a)(2) claim because the alleged harm "can only be redressed by awarding relief to those individual plaintiffs who have suffered a reduction of their benefits.").

Plaintiff's allegations within the complaint address only the money lost to him because of the Trustees alleged inequitable application of the Plan provisions. Although plaintiff mentions a violation of the Trustees' fiduciary duty to all Plan participants, he goes on to request monetary damages for himself in excess of $100,000. Complaint ¶ 21. As monetary compensation by an individual plaintiff is clearly not permitted, plaintiff may not bring a claim under § 1132(a)(2).

Section 1132(a)(3) allows a participant to sue individually for equitable relief. Equitable relief under § 1132(a)(3) "must refer to those categories of relief that were typically available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). Typically, suits seeking a sum of money are suits for money damages, and "money damages are the classic form of legal relief." *Mertens*, 508 U.S. at 255. However, a sum of money might qualify as equitable relief under § 1132(a)(3) if, as a demand for restitution, plaintiff seeks "a constructive trust or an equitable lien, where money or property identified as belonging in conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 213.

In the present case, plaintiff claims that he is "entitled to money damages." Complaint ¶ 21. This type of monetary relief in no way qualifies as "equitable relief" under § 1132(a)(3).

10

Moreover, plaintiff does not ask for any type of restitution, legal or equitable. Therefore, plaintiff may not bring a claim under § 1132(a)(3), and thus, has no standing to sue for breach of fiduciary duty.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that defendants' motion for summary judgment be granted and plaintiff's complaint be dismissed in its entirety. Any objections to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Sandra L. Townes within ten business days of receiving this Report and Recommendation**.** Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**Dated: July 12, 2007**
**Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**